UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HAROLD WEST, SR.                                             CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL.                    NO.: 3:09-cv-00564-BAJ-RLB

RULING AND ORDER

Before the Court is Defendant Sheriff Beauregard Torres's ("Sheriff Torres") **MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT (Doc. 107),** requesting "dismissal or, alternatively, summary judgment, dismissing him from this suit, with prejudice." (*Id.*). Plaintiff Harold West ("West") opposes the motion, (*see* Docs. 99, 100, 108, 114), and Sheriff Torres has filed a reply, (Doc. 127). Jurisdiction is based on 28 U.S.C. § 1331. There is no need for oral argument.

I.   BACKGROUND

Plaintiff West alleges that he was assaulted on August 4, 2008, while he was incarcerated in Point Coupee Parish, Louisiana, at a facility under Sheriff Torres's supervision. (Doc. 46 at ¶ IV). Specifically, West alleges that "**Norman Gremillion,** an officer, employee, agent, and/or representative of the Louisiana Department of Corrections, Point Coupee Parish Sheriff, and/or **Louisiana Workforce, LLC,** entered Mr. West's cell while Mr. West was sleeping, pulled down Mr. West's pants and rammed a wire coat hanger into Mr. West's rectum," causing "severe physical injury, pain and humiliation." (*Id.* at ¶¶ IV–V).

Following the alleged assault, West sued Sheriff Torres, Gremillion, Louisiana Workforce, LLC, and others,[1] alleging various constitutional violations under 42 U.S.C. § 1983. (*Id.* at ¶ XII). As to Sheriff Torres, West's complaint does not claim that Sheriff Torres was personally responsible for the alleged attack, or even present when it occurred. (*See generally id.*). Instead, West asserts that Sheriff Torres is responsible for the assault because he: 1) "fail[ed] to adequately train, monitor and properly supervise Gremillion"; and 2) maintained a "custom, pattern and practice, [that] systematically fostered an atmosphere that encouraged the use of excessive force and/or gratuitous punishment by . . . employees" at the Point Coupee facility. (*See id.* at ¶¶ IX–XIII).

In response to West's complaint, Sheriff Torres initially filed a **CROSS-CLAIM AND THIRD-PARTY COMPLAINT (Doc. 41)** against Louisiana Workforce, and its insurance provider Lexington Insurance Company, "seek[ing] a declaratory judgment that Lexington Insurance Company provides insurance in this case, [and] that Louisiana Workforce and Lexington Insurance Company have a duty to defend and indemnify him in this action." (Doc. 41 at ¶ 13). Later, Sheriff Torres filed the **MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT (Doc. 107),** with supporting exhibits, that is the subject of this Order. West filed a memorandum in opposition to the Sheriff's Motion, (Doc.

---

[1] This Court previously dismissed West's claims against the State of Louisiana (Doc. 35), and dismissed in part his claims against Paul Perkins, d/b/a Pointe Coupee Work Release (Doc. 53). Later, this Court granted Mr. West's request to substitute Louisiana Workforce, LLC *in name only* "in place of Point Coupee Work Release." (Doc. 39 at p. 14).

2

108), as well as certain exhibits (Docs. 100-1, 108-2, 114). The Sheriff filed a reply. (Doc. 127).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. LAW AND DISCUSSION

Sheriff Torres argues that West's claims against him must be dismissed because it is undisputed that the Sheriff was not present at the time of the alleged attack, and therefore he cannot be personally liable for West's injuries, (*see* Doc. 107-1), and, further, West has not otherwise produced sufficient evidence to substantiate his claims that the attack was the result of an official custom or practice, or a failure to train, such that Sheriff Torres may be liable in his official capacity as Sheriff. (*See id.*; *see also* Doc. 127). West responds that "facts remain[] to be proven at trial regarding whether Sheriff Torres'[s] policies and procedures, and his customs, patterns and practices contributed to the injuries sustained by Mr. West," (Doc. 181-1 at p. 3), and draws the Court's attention to "the cooperative agreement entered into by Sheriff Torres and Louisiana Workforce," which required Louisiana Workforce "to adhere to all of Sheriff's policies and procedures regarding the work release program." (*Id.* at pp. 2–3).

As an initial matter, it is uncontroverted that Sheriff Torres was not present at the time of the alleged attack. (*See* Doc. 107-4 at p. 53 (Deposition of Sheriff Torres); Doc. 107-5 at pp. 47–53, 121 (Deposition of Harold West); Doc. 107-6 at pp. 39–42 (Deposition of Norman Gremillion)). Therefore, Sheriff Torres cannot be personally liable for the deprivation of West's constitutional rights. *Cf. Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).

Nor is West's evidence sufficient to withstand Sheriff Torres's motion for summary judgment on a claim that Sheriff Torres is responsible for the alleged attack in his official capacity as Sheriff. West advances two theories in support of his official capacity claim against Sheriff Torres. First, he argues that Sheriff Torres "fail[ed] to adequately train, monitor and properly supervise Gremillion." (Doc. 46 at ¶ IX). Second he alleges that Sherriff Torres maintained a "custom, pattern and practice, [that] systematically fostered an atmosphere that encouraged the use of excessive force and/or gratuitous punishment by . . . employees" at the Point Coupee facility. (*Id.* at ¶ X; *see also* Doc. 108-1 at p. 3).

### a. Failure to Train

It is well-established that "[a] sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if:

> 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.

*Thompson*, 245 F.3d at 459. Here, however, West has produced absolutely no evidence to establish the existence of *any* of these elements essential to his case. *See Celotex*, 477 U.S. at 322. Rather, the only evidence West relies on in opposing Sheriff Torres's request for summary judgment is the Cooperative Endeavor Agreement between Louisiana Workforce, LLC and the Point Coupee Sheriff's Department, which establishes Louisiana Workforce's "right to occupy . . . one (1)

wing at the Pointe Coupee Parish Detention Center" for operation of a work release program. (Doc. 108-2 at ¶¶1, 7, 11; *see also* Doc. 114). This document proves nothing about Sheriff Torres's failure to train or supervise Norman Gremillion, much less whether that alleged failure resulted in a violation of West's rights, or constituted deliberate indifference to West's rights. *See Thompson*, 245 F.3d at 459. Accordingly, West has not produced sufficient evidence to withstand summary judgment on his claim that Sheriff Torres is liable for the alleged attack against him because he failed to train or supervise Gremillion. *See Celotex*, 477 U.S. at 322.

### b. *Official Policy or Custom*

West's official policy or custom claim against Sheriff Torres fares no better. The Fifth Circuit has instructed that "[t]he 'official policy' requirement may be met in at least three different ways:

> (1) When the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) Where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) Even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (quotation marks and citations omitted). Again, however, the only evidence West has produced to support his official capacity claim is the Cooperative Endeavor Agreement. And, again, the Court finds that the Cooperative Endeavor Agreement simply does not

support West's claim that an official policy or custom resulted in the alleged attack. First, the Cooperative Agreement does not "promulgate[] a generally applicable statement of policy," the implementation of which resulted in the alleged attack. *Id.* Second, the Agreement does not indicate that Sheriff Torres himself "violated a constitutional right." *Id.* Finally, the Cooperative Agreement cannot be read to support a claim that Sheriff Torres was "deliberately indifferent" to a need to take appropriate measures to reduce the risk of the type of constitutional violation alleged to have occurred here. *Id.* Quite the contrary, the Agreement expressly provides that "WORKFORCE agrees to comply with all laws and DOC regulations regarding work release programs, including but not limited to LA R.S. 15:711," and that "WORKFORCE further agrees to comply with all of SHERIFF'S policies and procedures regarding the work release program."[2] (Doc. 108-2 at ¶ 11; *see also id.* at ¶ 7).

In sum, the Court finds that West has failed to produce evidence establishing "a sufficient disagreement to require submission to a jury" on either an individual capacity or an official capacity claim against Sheriff Torres. *Anderson*, 477 U.S. at 251–52. Accordingly, Sheriff Torres "must prevail as a matter of law." *Id.* at 252.

---

[2] West has not produced the Point Coupee Sheriff Department's "policies and procedures regarding the work release program," much less any Sheriff Department policies or procedures which would support a claim of deliberate indifference to his constitutional rights.

7

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Sheriff Torres's **MOTION FOR SUMMARY JUDGMENT (Doc. 107)** is **GRANTED**. Plaintiff West's claims against Sheriff Torres are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Sheriff Torres's alternative **MOTION TO DISMISS (Doc. 107)** is **DENIED AS MOOT** based on this Court's dismissal of West's claims at the summary judgment stage.

**IT IS FURTHER ORDERED** that Sheriff Torres's **CROSS-CLAIM AND THIRD-PARTY COMPLAINT (Doc. 41)** against defendants Louisiana Workforce and Lexington Insurance Company is **DISMISSED AS MOOT** based on this Court's dismissal of West's claims against Sheriff Torres.

Baton Rouge, Louisiana, this 13th day of November, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**