UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**HAROLD WEST, SR.**                                                      CIVIL ACTION

**VERSUS**

**STATE OF LOUISIANA, ET AL.**                     NO.: 3:09-cv-00564-BAJ-RLB

### RULING AND ORDER

Before the Court is Defendant Louisiana Workforce, LLC's ("Louisiana Workforce") **MOTION FOR SUMMARY JUDGMENT (Doc. 117),** requesting "summary judgment on the basis that there is no genuine issue of material fact as to [Louisiana Workforce's] lack of liability in this case." (*Id.*). Plaintiff Harold West ("West") opposes the motion, (Doc. 120), and Louisiana Workforce has filed a reply, (Doc. 129). Jurisdiction is based on 28 U.S.C. § 1331. There is no need for oral argument.

### I.   BACKGROUND

Plaintiff West alleges that he was assaulted on August 4, 2008, while he was incarcerated in Point Coupee Parish, Louisiana. (Doc. 46 at ¶ IV). Specifically, West alleges that "Norman Gremillion, an officer, employee, agent, and/or representative . . . Louisiana Workforce, LLC, entered Mr. West's cell while Mr. West was sleeping, pulled down Mr. West's pants and rammed a wire coat hanger into Mr. West's rectum," causing "severe physical injury, pain and humiliation." (*Id.* at ¶¶ IV–V).

Following the alleged assault, West sued Gremillion, Gremillion's employer Louisiana Workforce,[1] and others,[2] alleging various constitutional violations under 42 U.S.C. § 1983. (*Id.* at ¶ XII). As to Louisiana Workforce, West alleged: 1) "a failure to adequately train, monitor and properly supervise Gremillion, who . . . has a history of such abuse of inmates" and, thus, "should not have been allowed unfettered control of and/or access to Mr. West"; and 2) a "custom, pattern and practice, that systematically fostered an atmosphere that encouraged the use of excessive force and/or gratuitous punishment by [Louisiana Workforce's] . . . employees," at the Point Coupee facility. (*See id.* at ¶¶ IX–X). Mr. West also alleged that Louisiana Workforce and the other Defendants "violate[d] Harold West's rights to due process, equal protection under the law, and to be secure in his person and free from unreasonable search and seizure through the use of brutal excessive force and the use of unwarranted gratuitous punishment." (*Id.* at ¶ XIII). Finally, West alleged a state law battery claim against the defendants. (*Id.* at ¶ V).

In response to West's complaint, Louisiana Workforce initially filed a Motion to Dismiss, which this Court denied in part and granted in part. Specifically, this

---

[1] West's original Complaint did not identify Louisiana Workforce as a defendant. (*See* Doc. 1). Instead, the Complaint identified "Paul Perkins, d/b/a Pointe Coupee Work Release." (*See id.* at ¶ II). Later, in response to Defendant Perkins's Motion to Dismiss (Doc. 13), West "stipulate[d] that in his complaint he [incorrectly] named 'Paul Perkins, d/b/a Point Coupee Work Release' as one of the party defendants," and requested leave "to amend his Complaint to substitute the name 'Louisiana Workforce, LLC' as the proper party defendant." (Doc. 19 at p. 2). This Court granted Mr. West's request for "leave to amend the complaint to substitute Louisiana Workforce, LLC as a defendant in place of Point Coupee Work Release." (Doc. 39 at p. 14).

[2] This Court previously dismissed West's claims against the State of Louisiana and Point Coupee Sheriff Beauregard Torres.

2

Court denied Louisiana Workforce's motion to the extent that it sought dismissal of West's failure to train and official policy claims; granted it as to Mr. West's remaining constitutional claims; and declined to exercise supplemental jurisdiction over West's state law battery claim. (*See* Doc. 39 at pp. 10–14 (Supplemental and Amending Magistrate Judge's Report); Doc. 53 (Order Adopting Magistrate Judge's Supplemental and Amending Report)).[3] More recently, Louisiana Workforce filed the **MOTION FOR SUMMARY JUDGMENT (Doc. 117),** with supporting exhibits, that is the subject of this Order. West filed a memorandum in opposition to Louisiana Workforce's Motion, (Doc. 120), as well as certain exhibits, (Doc. 120-1). Louisiana Workforce filed a reply with additional exhibits. (Doc. 129).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the

---

[3] In his opposition to Louisiana Workforce's Motion for Summary Judgment, Mr. West suggests that when this Court granted his request for "leave to amend the complaint to substitute Louisiana Workforce, LLC as a defendant in place of Point Coupee Work Release," (Doc. 39 at p. 14), its Order somehow revived Mr. West's other constitutional claims against Defendants Perkins and/or Louisiana Workforce, LLC. (*See* Doc. 120 at pp. 1–2). Contrary to West's assertions, the Court's Order allowed West to substitute Louisiana Workforce *in name only* for Point Coupee Work Release; it did not reinstate Mr. West's dismissed constitutional claims. (*See* Doc. 39 at p. 14). To be clear, *only* Mr. West's official policy and failure to train claims remain against Louisiana Workforce.

3

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  LAW AND DISCUSSION

Louisiana Workforce argues that West's claims must be dismissed because: (1) West "has not produced any evidence to indicate that Mr. Perkins—or any Louisiana Workforce supervisor—was personally or directly involved in any deprivation of constitutional guarantees or the implementation of any unconstitutional policy or custom," (Doc. 117-1 at p. 6); and (2) West has not otherwise produced sufficient evidence to establish that Louisiana Workforce "implemented an unconstitutional policy or custom," or "failed to train its employees," as required to establish municipal liability. (*see id.* at pp. 6–13). Quite the contrary, Louisiana Workforce claims that it "implemented policies and customs to promote a positive, respectful, violence-free

4

atmosphere for the work release facility and its participants," (*id.* at p. 9), and that it "properly trained and supervised its employees, including Gremillion," (*id.* at p. 13), and has produced a number of exhibits in support of these claims. West responds that "there remain herein genuine issues of material fact, and [therefore, Louisiana Workforce] is not entitled to judgment as a matter of law," (Doc. 120 at p. 6), and draws the Court's attention to a service provider contract entered into by Louisiana Workforce and the Point Coupee Sheriff's Department, (*id.* at p. 4–5), as well as certain excerpts from Defendant Gremillion's deposition, (*id.* at p. 6).

As an initial matter, Louisiana Workforce is correct to note that the allegations against it do not involve a claim that "Paul Perkins [the owner of Louisiana Workforce] was personally involved in the attack on [Mr. West]." (Doc. 117-1 at p. 6). West himself clarified this point in his opposition to Louisiana Workforce's prior motion to dismiss. (*See* Doc. 19 at p. 5). Nor is there any evidence that Perkins or any other Louisiana Workforce supervisor was directly involved in any deprivation of West's constitutional rights, or the implementation of an unconstitutional policy or custom. (*See* Doc. 107-4 at p. 53 (Deposition of Sheriff Torres); Doc. 107-5 at pp. 47–53, 121 (Deposition of Harold West); Doc. 107-6 at pp. 39–42 (Deposition of Norman Gremillion)). Therefore, whether West's claims withstand summary judgment depends on whether West has produced sufficient evidence to support his allegations that Louisiana Workforce "fail[ed] to adequately train, monitor and properly supervise Gremillion," (Doc. 46 at ¶ IX), and/or that

5

Louisiana Workforce maintained a "custom, pattern and practice, [that] systematically fostered an atmosphere that encouraged the use of excessive force and/or gratuitous punishment by [its] . . . employees." (*Id.* at ¶ X).

### a. Failure to Train

The Fifth Circuit has instructed that "[a] supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate when the supervisory official breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quotation marks and alterations omitted).

> To hold a supervisory official so liable, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

*Id.* at 911–12.

Here, the *only* evidence West has produced to sustain his failure to train claim against Louisiana Workforce's motion for summary judgment are certain excerpts from Norman Gremillion's deposition indicating: (1) prior to his employment with Louisiana Workforce, Gremillion did not receive law enforcement training, (*see* Doc. 107-6 at pp. 19–20); and (2) Gremillion was frequently left alone with work-release participants, (*see id.* at pp. 27–30). (Doc. 120 at pp. 5–6). By West's estimation, this testimony alone is sufficient to create a "genuine issue of material fact" regarding his failure to train claim. (*Id.* at p. 6).

6

This Court disagrees. Gremillion's deposition testimony certainly establishes that Gremillion often went without supervision in the course of his employment at Louisiana Workforce, thereby meeting the first prong of the failure to train analysis. *See Smith*, 158 F.3d at 911–12. However, despite West's bald assertion that Gremillion's lack of "law enforcement training is at a minimum gross negligence," (Doc. 120 at p. 6), this Court fails to see how Gremillion's testimony demonstrates "deliberate indifference" to West's constitutional rights, much less "a causal link" between Louisiana Workforce's failure to train or supervise and the constitutional violation West has alleged—specifically, that "Gremillion . . . pulled down Mr. West's pants and rammed a wire coat hanger into [his] rectum," (Doc. 46 at ¶ IV). *Smith*, 158 F.3d at 912.

On the other hand, in support of its Motion for Summary Judgment, Louisiana Workforce has produced substantial evidence contradicting West's failure to train claim. This evidence includes Louisiana Workforce training materials, which, among other things, contain a unit on maintaining a "Violence Free Workplace," (Doc. 117-8 at p. 143), specifically designed to (1) make employees "aware of the Violence-Free Workplace Policy," and (2) "Define activities, which constitutes [sic] workplace violence," (*id.* at p. 145). This unit defines "violence" to include "the commission of . . . battery," with battery defined as "the intentional use of force or violence upon another." (*Id.* at p. 147). Additionally, Louisiana Workforce has produced corresponding tests completed by Gremillion, indicating his

7

mastery of Workforce's training materials, as well as various written acknowledgements, "post orders," meeting attendance sheets, and memoranda indicating Gremillion's knowledge of, and training in, Louisiana Workforce's Violence-Free Workplace Policy. (*See id.* at pp. 165–229). West does not address any of Louisiana Workforce's various exhibits in his opposition memorandum. (*See generally* Doc. 120).

The U.S. Supreme Court has admonished that "culpability for a deprivation of rights [under Section 1983] is at its most tenuous where a claim turns on a failure to train," *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011), and, further, that "rigorous standards of culpability and causation must be applied" when assessing claims based on unconstitutional acts by municipal employees, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). Here, West's evidentiary showing falls far short of that which is required to demonstrate the requisite "standards of culpability and causation" in the face of Louisiana Workforce's Motion for Summary Judgment, *Bryan*, 520 U.S. at 405, particularly in light of Louisiana Workforce's evidence to the contrary. *See Celotex*, 477 U.S. at 322.

### b. *Official Policy or Custom*

West's official policy or custom claim against Louisiana Workforce fares no better. The Fifth Circuit has instructed that "[t]he 'official policy' requirement may be met in at least three different ways:

> (1) When the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) Where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) Even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (quotation marks and citations omitted).

The *only* evidence West has produced to support his official capacity claim is the Cooperative Endeavor Agreement between Louisiana Workforce and the Point Coupee Sheriff's Department, which establishes Louisiana Workforce's "right to occupy . . . one (1) wing at the Pointe Coupee Parish Detention Center" for operation of a work release program. (Doc. 120-2 at ¶¶1, 7, 11). However, the Cooperative Endeavor Agreement simply does not support West's claim that an official policy or custom led to the deprivation of his constitutional rights. First, the Agreement does not "promulgate[] a generally applicable statement of policy," the implementation of which resulted in the alleged attack. *Burge*, 187 F.3d at 471. Second, the Agreement does not indicate that Louisiana Workforce itself "violated a constitutional right." *Id.* Finally, the Agreement cannot be read to support a claim that Louisiana Workforce was "deliberately indifferent" to a need to take appropriate measures to reduce the risk of the type of constitutional violation alleged here. *Id.* Indeed, the previously discussed materials produced by Louisiana

9

Workforce in support of its Motion for Summary Judgment indicate the opposite—specifically, that Louisiana Workforce was aware of the risk of violence in its facility, and took deliberate steps to *reduce* that risk. (*See* Doc. 117-8 at p. 143–229). Again, West has not addressed any of Louisiana Workforce's materials in his opposition. (*See generally* Doc. 120).

In sum, the Court finds that West has failed to produce evidence establishing "a sufficient disagreement to require submission to a jury" on either a failure to train or official policy claim against Louisiana Workforce. *Anderson*, 477 U.S. at 251–52. Accordingly, Louisiana Workforce "must prevail as a matter of law." *Id.* at 252.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Louisiana Workforce's **MOTION FOR SUMMARY JUDGMENT (Doc. 117)** is **GRANTED**. Plaintiff West's claims against Louisiana Workforce are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 13th day of November, 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**